IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF VIRGINIA

CAROL SCARLETT )
1417 Ginger Lane )
Naperville, IL 60565, )
 )
          Plaintiff, )
 )  Civil Action No. 1:24 cv 386
v. )
 )
UNITED STATES OF AMERICA / )
National Science Foundation (NSF) )
2415 Eisenhower Avenue )
Alexandria, Virginia 22314, )
 )
          Defendant. )
_____)

## COMPLAINT

Plaintiff Dr. Carol Scarlett brings this action against the United States Government, on account of the National Science Foundation (NSF), to seek relief for violations of the Virginia Human Right Act and US Title VII of the Civil Rights Act of 1964. Plaintiff contends that the employees of the National Science Foundation have also violated Federal Legislation Title 2 CFR 200.100 and 200.203 which disallows enhancement of grant criteria and the use of conflicting criteria. It is these latter violation that Plaintiff asserts were committed to deny the Plaintiff, an African American Female, equal access to participate in a federal program.

### JURISDICTION AND VENUE

1. The Court has jurisdiction, under 28 U.S.C. 1491, over this action as the Defendant is the United States Government.

2. Venue is also proper, under 28 U.S.C. 1391, as the Defendant resides in the Eastern District of Virginia.

1

## PARTIES

3. Plaintiff, who is a small business owner, was discriminated against while applying to the Small Business Innovation Research (SBIR) Phase II program. After reporting being given a significant criteria enhancement, the Plaintiff was retaliated against by: having had a false complaint filed with the National Science Foundation's (NSF's) Office of Inspector General (OIG), being placed under a five-year investigation and later being told by the NSF's OIG that she was held under a contract requiring work without pay in breach of the original grant conditions and federal contract and employment laws.

4. Defendant is an agency of the United States Government, the National Science Foundation (NSF), and is headquartered at 2415 Eisenhower Avenue, Alexandria, Virginia.

## FACTS OF THE OCCURANCE

5. On December 15th, 2016 Plaintiff received a Phase 1, Small Business Innovative Research (SBIR) grant from the National Science Foundation (NSF).

6. In May of 2017, before the conclusion of the Plaintiff's Phase I, NSF Program Manager, Dr. Peter Atherton, advised Plaintiff that she would need to retain at least 1-month of the company's burn rate as defined by the last 3-months of operation, in order to qualify for a Phase II award.

7. In August of 2017, after completing the Phase 1 work, Plaintiff applied for a Phase 2 SBIR through the NSF.

8. On March 2, 2018, after submitting financial paperwork as part of the Phase 2 application, Plaintiff was given enhanced criteria by an NSF externally hired CPA Firm, Plaintiff

was told to have twenty-four times (24x) the stated NSF criteria for financial liquidity, to qualify for a federal grant in violation of federal criteria governing grants (see Title 2 CFR 200.100 and 200.203 as well as Exhibit 1_AT_Legal-Email-Zoschke).

9. On March 9, 2018 Mr. Rhodenbaug, a CPA at the same NSF externally hired CPA Firm, emailed a Project Lead, Mr. Sohel Ahmed, at NSF's Cost Analysis and Audit Resolution (CAAR) Office making materially false statements that he would later retract and that contradicted the report submitted to NSF by the externally hired CPA firm (see Exhibit 2_AT_Legal-Email-Rhodenb and 3_AT_Legal-Email-RodenbSohel).

10. On April 2, 2018, Plaintiff and her small business, Axion Technologies, LLC, were denied a SBIR Phase II grant based on non-NSF criteria.

11. On April 2, 2018, Plaintiff spoke with a representative from the Division of Grants and Agreements (DGA) where Plaintiff learned that a report from the Cost Analysis and Audit Resolution (CAAR) office submitted by Mr. Ahmed provided false information regarding the interim financial statements for the Plaintiff's small business – which were to be used in evaluating the Plaintiff's small business in accordance with NSF Policies & Procedures Handbook (see Exhibit 4_AT_Legal-Email-SohelRpt).

12. On April 3, 2018, a Branch Chief for the CAAR Office, Mr. Charles Ziegler, emailed Program Managers at NSF telling them "Before everyone gets in an uproar over this decile recommendation let me explain my position..." (see Exhibit 5_At_Legal-Email-Ziegler).

13. Thus Mr. Ziegler's documents criticism of the CAAR Office's handling of the Plaintiff's application – in addition to the Plaintiff's criticisms of criteria enhancements.

14. On April 5, 2018 a retaliatory complaint (see Exhibit 22_AT_Legal-FOIA-OIGComplaint) against the Plaintiff was filed with the Office of Inspector General (OIG),

which Plaintiff believes to have been written by Mr. Charles Ziegler based on the content of the document and the fact that it involved the forwarding of an NSF internal email, that email appears to have been written by Mr. Sohel Ahmed, that alleged:

I. See Exhibit 22_AT_Legal_FOIA-OIGComplaint pp. 2, the complainant makes a claim (identified as "Claim 1" pp. 2) that a statement made by the Plaintiff was taken to mean that she may, in the future, have contract conflicts. According to the complainant, in a hypothetical Phase II Plaintiff may not be able to work 51% with the small business and less than full time with any other firm, an NSF requirement. This hypothetical Phase II never happened and never had a factual basis. The actual statement cited by the complainant, makes no mention of work during a Phase II. The follow up statement in the letter (see text Plaintiff's Letter) clearly says that, due to the limitation of operating on the owner's cash, the Plaintiff was applying for the Phase II. The budget for the Phase II, $750,000/2yrs or about $31,000/month, reflected that the Plaintiff would be full-time with the small business.

II. The requirement to provide a letter of investment explaining specifically how the company would operate "without" a Phase II (see Exhibit-4_Zoschke-LI-WithOUTPII) was part of the enhanced criteria that the Plaintiff was given in violation of TITLE 2 CFR 200.100 and 200.203.

III. The letter was provided because the Plaintiff was given illegally enhanced criteria and the letter was then used to falsely claim hypothetical conflicts.

IV. The actual statement by the complainant (Claim 1) makes no accusation nor allegation of waste, fraud nor abuse; the basis of an OIG complaint.

V. Second, the complainant makes Claim 2 pp.2 stating:

> "…this sets off a possible warning signal as there have been some SBIR cases where the awardee performs the research in the University lab …"

Again, the statement makes neither accusation nor allegation that the Plaintiff has in fact violated any grant rules, but rather notes that some faculty have performed work in a University lab. This statement also conflicts with the Technology Transfer (STTR supported federal programs) whereby recipients

4

        of federal funds through the Small Business Innovative Research program at NSF are encouraged to use/develop University performed work. Additionally, the Plaintiff never used University performed work and the complainant never states there was reason to believe otherwise. Thus "Claim 2" cannot be an OIG complaint of waste, fraud or abuse.

VI.    Finally, complainant makes Claim 3 pp.2, saying that they are unaware if Plaintiff "…was employed full time during the period [Phase 1]…" which is not an allegation of actual contract conflicts. This statement could not be Probable Cause for an OIG investigation as the person admits they have no basis to believe actual conflicts occurred.

15.    The April 5th, 2018 complaint violates Whistleblower protections afforded to the Plaintiff under NSF OIG and DOJ stated policies and is the basis for a lawsuit against the NSF's OIG (see 1:23-cv-01323-MSN-JFA): "All [NSF/DOJ] employees, contractors, subcontractors, **_grantees,_** subgrantees, and personal services contractors are protected from retaliation for making a protected disclosure" see https://www.nsf.gov/bfa/dias/policy/outreach/grantsconf/oig_june14.pdf and https://oig.justice.gov/hotline/whistleblower-protection) – see also 41 USC 4712 for congressional expansion of WPA

16.    On April 6, 2018, one day after the complaint was filed, Branch Chief, Mr. Charles Ziegler, (see §11 above) from the National Science Foundation (NSF) spoke by phone with the Plaintiff and pressed the Plaintiff to move twenty-four times (24x) the company's one-month burn to a liquid, business account and **_file all new financial paperwork_**, before submitting an appeal of the declined proposal (see Exhibit 15_AT_Legal-CYS-Affidavit2).

17.    On April 8, 2018, Plaintiff submitted an appeal of the decline decision based on the information provided by the NSF about the reason for the decline.

18.    On May 11, 2018, Plaintiff received a letter declining her appeal of the NSF's

5

decline decision stating even more new and enhanced criteria for receiving a grant in violation of Title 2 CFR 200.100 and 200.203 as well as the Virginia Human Right Act and US Title VII of the Civil Rights Act of 1964, which protect citizens from race and gender discrimination.

19. On June 3, 2018 Plaintiff filed a complaint with the NSF OIG, that was assigned to Investigator Maureen Weir and Investigative Attorney Elizabeth Christensen.

20. Plaintiff's June 3, 2018 complaint alleged: 1. Race and Gender discrimination in processing the Plaintiff's application, 2. Whistleblower Retaliation in the processing of Plaintiff's appeal of the decision to decline her Phase II application and 3. Violations of CFR rules for competitive awards (Title 2 CFR 200.100 and 200.203).

21. Given that Plaintiff had been instructed to move $130,000 to a business account before appealing, Plaintiff stated other concerns as well in her complaint.

22. On June 21, 2018 OIG Investigators Weir and Christensen interviewed Plaintiff about her allegations.

23. On/around June 29, 2018, Plaintiff received a subpoena from NSF OIG for her company's financial records.

24. On March 14, 2019 Plaintiff received documents, following a FOIA request to the National Science Foundation (NSF), showing that both the Branch Chief (see §11 above) as well as a Project Lead (see §8 above) at the CAAR Office received communications from an externally hired CPA after on March 9th, 2018.

25. The released documents showed that: on March 20, 2018, after receiving CPA Rhodenbaug's March 9th email, Mr. Ahmed, emailed Mr. Rhodenbaug and suggested that the CPA report evaluating the Plaintiff's company be altered.

26. On March 23, 2018 CPA Rhodenbaug wrote to Mr. Ahmed claiming that the Plaintiff had provided new paperwork that was "mathematically correct and rolled forward";

6

even though records show that no new paperwork had been provided since before the CPA first emailed Mr. Ahmed or prior to March 5th. *Mr. Rhodenbaug claimed that the firm had recommended the Plaintiff's business based on a letter of investment, that was not an NSF requirement,* and that the firm would change the recommendation based on Mr. Ahmed's suggestion.

27. On March 27, 2018 Mr. Ahmed wrote that he would accept Mr. Rhodenbaug's report but that they would discuss expectation. Mr. Ahmed also stated that he would not use the Plaintiff's interim financial statements, as required by NSF policy.

28. The interim statements showed that the Plaintiff's business passed liquidity requirements. Mr. Ahmed's report to the Division of Grants and Agreements stated that the Plaintiff had failed those liquidity requirements and that the Plaintiff had also failed to provide a cash flow – cash flows are required only if liquidity requirements are not met.

29. On September 11, 2019 Plaintiff received a 5-line closeout letter from OIG Investigative team Weir and Christensen stating that they found no evidence to support Plaintiff's allegations – the letter violated reporting requirement under 41 USC 4712.

30. Between 2019 and 2022, Plaintiff filed several FOIA requests to secure records to evaluate the Defendant's claims of "no evidence" for the alleged discrimination and to uncover facts related to the NSF OIG's investigation of the Plaintiff.

31. During this time, the Defendant continued to deny the Plaintiff's request for any reconsideration and for equal access/protection under the law.

32. On June 26th, 2022, Plaintiff received records from Mr. Rhodenbaug's attorney that showed how Investigator Weir conducted an interview in December of 2018 with CPA Rhodenbaug, during which he freely admitted giving the Plaintiff enhanced criteria by requiring an investment (Exhibit 25_AT_Legal-WhistB-Rhodenbaug-NSF.pdf)

33. In February of 2023 Plaintiff filed an SF95 with the NSF General Counsel stating that she intended to file a discrimination lawsuit based on the enhanced criteria as well as the attempts by the NSF OIG to coverup Plaintiff's case of whistleblowing.

34. In May of 2023, Plaintiff received evidence of retaliation and attempted coverup of discrimination – a complaint was filed against the Plaintiff on April 5th, 2018 was released to the Plaintiff following close to 2-years of FOIA filings.

35. On August 24, 2023 Plaintiff received a demand for payment from NSF based on an earlier demand sent by the US Attorney's Office for the Northern District of Florida, claiming that the Plaintiff's investments during the Phase I would be taken by the agency – further denying the Plaintiff equal rights under the original contract.

36. On November 2, 2023, after several request for information on the letter of demand and after repeatedly pointing out that the demand was improper due to the language in the original grant, Plaintiff received a letter notifying her that the demand was being submitted to the Treasury CRS for collections – which violated laws protecting consumers from scams seeking money and using collection offices under the Federal Debt Collection Protection Act (FDCPA) dictating pause on disputed debt.

37. On November 9, 2023, Plaintiff received a decline on her SF95 complaint alleging damages due to having been discriminated against in the Phase II processing.

38. On February 9, 2024, Plaintiff filed a new SF95 alleging Defamation and ongoing discrimination, as well as violation of the original contract.

## STATEMENT OF COMPLAINT

**Breach of Contract (Count I):**

39. Records show that, throughout the processing of the Plaintiff's grant decline, Mr.

Sohel Ahmed and Mr. Charles Ziegler, National Science Foundation's (NSF's) Officers from the Cost Analysis and Audit Resolution (CAAR) Office, both participated in promoting enhanced grant criteria beyond what is allowed by NSF stated policies.

40. Defendant, in doing so, violated Code of Federal Regulations requirements for government grants (see Title 2 CFR 200.100 and 200.203 and Exhibit 3_AT_Legal-Email-RodenbSohel).

41. Mr. Ahmed even issued a report to another NSF Branch Office that knowingly overlooked NSF's requirement to use interim financial statements when evaluating financial viability (see Exhibit 4_AT_Legal-Email-SohelRpt) of Plaintiff's company.

42. Defendant violated the conditions for the Phase II application by holding the Plaintiff to unstated, significantly enhanced criteria.

43. In creating new criteria for evaluating the Plaintiff's proposal, Defendant also breached the conditions of the Plaintiff's original contract with NSF whereby NSF Program Manager, Dr. Atherton, clearly stated (see above §6) that Plaintiff was to maintain 1-month of the company's burn rate defined by the last 3-months of operation.

**Violation of Virginia's Human Rights Act and the US Civil Rights Act (Count II):**

44. Plaintiff alleges that the Defendant discriminated against her based on her race.

45. Defendant conspired to deprive the Plaintiff of her Civil Rights as outlined in the Virginia Human Rights Act, US Title VII, and 42 U.S.C. § 2000d – providing that discrimination in programs receiving federal financial assistance is a violation of US Civil Right legislation.

46. According to a witness at the NSF during this time, the CAAR Office had never recommended the decline of a proposal having Plaintiff's financial profile.

47. Thus, while Defendant claimed to be declining the Plaintiff based on financial information, they were in fact simply discriminating based on the Plaintiff's race.

**Violation of Virginia's Human Rights Act and the US Civil Rights Act (Count III):**

48. Plaintiff alleges that the Defendant discriminated against her based on her gender.

49. Gender discrimination violates: Virginia Human Rights Act, US Title VI, and 42 U.S.C. § 2000d – providing that discrimination in programs receiving federal financial assistance is a violation of US Civil Right legislation.

50. Following receipt of the official letter declining the Plaintiff's proposal, on April 2nd, 2018, Plaintiff sought explanation from several division heads at NSF which lead to some of those individuals questioning the NSF CAAR Officials involved in Plaintiff's review process.

51. This questioning of those CAAR Officials' decision to decline the Plaintiff's Phase II application was made evident in Mr. Charles Ziegler's response (see Exhibit 5_AT_Legal-Email-Ziegler).

52. Mr. Ziegler had worked with Mr. Ahmed to enhance criteria given to the Plaintiff, and even falsely reported that Plaintiff had business losses.

53. Thus, while Defendant claimed to be declining the Plaintiff based on financial information, they were in fact simply discriminating based on the Plaintiff's gender.

**Violation of Whistleblower Protections (Count IV):**

54. Plaintiff alleges that Defendant attempted to cover-up discrimination by retaliating against a Whistleblower (the Plaintiff) in violation of 41 USC 4712.

55. Plaintiff provides to the court: a timeline, a partial deposition and a copy of a document released to the Plaintiff by the NSF OIG alleged to be a complaint filed against the Plaintiff on April 5, 2018 (see § 14 and 15 above).

56. There is a well delineated, causal connection between the filing of an OIG complaint against the Plaintiff on April 5, 2018 and Plaintiff's protected disclosure of illegally

enhanced criteria by the Defendant as early as March 30, 2018 – see also Exhibits: 24_AT_Legal-DepoCPA-NSFCrit-082120, 23_AT_Legal-Aff-Non-Criteria and 22_AT_Legal_FOIA-OIGComplaint for details.

**Violation of FDCPA (Count V):**

57. Plaintiff alleges that Defendant attempted to rewrite a defunct contract in an effort to cover-up Plaintiff's claims of discrimination and retaliation.

58. Defendant has made an official request for money supplied to the company by the Plaintiff, needed to maintain liquidity going into a proposed Phase II, which does not belong to the Defendant.

59. Defendant's demands were already disputed with the US Attorney's Office for the Northern District of Florida, on November 8, 2021. In over two years, the USAO NDF has never produced records to support the demand they initially made on November 3, 2021.

60. When Defendant made their own demand on August 24, 2023, Plaintiff did send a lengthy email of dispute and Plaintiff did demand that Defendant provide records to support the Defendant's claims in August 2023.

61. On November 2, 2023, after Plaintiff made several attempts to get the Defendant to provide their records, the Defendant supplied a single page labeled forensic analysis showing that: 1. Defendant had not paid the Plaintiff as originally agreed upon, 2. Defendant never compensated Plaintiff for any overtime and 3. Defendant attempted to claim funds paid directly into the business by the Plaintiff with no legal authority to do so.

62. Plaintiff made Defendant aware of the issues with its claims.

63. Instead of reevaluating its claims, Defendant forwarded a disputed federal debt to

the Treasury CRS in violation of US laws governing disputed grants – the Federal Debt Collection Protection Act (FDCPA).

## **PRAYER FOR RELIEF**

Plaintiff, who was first given enhanced grant criteria (see Exhibit 1_AT_Legal-Email-Zoschke) in violation of federal laws laid out in the Code of Federal Regulations (Title 2 CFR 200.100 and 200.203), has been harmed by actions of individuals responsible for the processing of applications to federal grant programs as well as the OIG Office charged with enforcement of laws relating to those applications. Instead of faithfully carrying out their duties, some of these individuals have directly caused the Plaintiff to lose granting funding, matching funding and potential profit. Plaintiff was further harmed by actions of employees at the NSF's Office of Inspector General who sought to coverup discrimination in the processing of grant applications. As part of Plaintiff's damages was due to the actions of the National Science Foundation's (NSF's) Office of Inspector General (OIG), Plaintiff has filed a separate suit for actions of NSF OIG employees. The NSF OIG worked to coverup violations of law that continued to strip the Plaintiff, and possibly other applicants, of equal access. Due to their actions, Plaintiff has lost years of product development.

Plaintiff, per her SF95 filed in February of 2023, is seeking $6,000,000.00 in damages. The sum certain for damages is based on an economist's estimate of the total damages due to the discrimination claim as stated above.

Dated: February 28th, 2024

        Respectfully submitted,

        *Dr. Carol Scarlett*

        Dr. Carol Scarlett
        1417 Ginger Lane
        Naperville, IL 60565
        Telephone: 631-398-8746
        cyscarlett@gmail.com

        *Plaintiff*

Plaintiff hereby requests a trial by jury in the above matter.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRIGINIA
_____ DIVISION

Dr. Carol Y. Scarlett
& Axion Technologies LLC
1417 Ginger Ln.
Naperville, IL 60565
_____
Plaintiff(s),

v.

United States
National Science Foundation
Office of Inspector General
_____
Defendant(s).

Civil Action Number: 1:24 cv 386

# LOCAL RULE 83.1(M) CERTIFICATION

**I declare under penalty of perjury that:**

**No attorney has prepared, or assisted in the preparation of** ___Civil complaint of Retaliation and Discrimination___.
**(Title of Document)**

Dr. Carol Scarlett
_____
Name of *Pro Se* Party (Print or Type)

_____
Signature of *Pro Se* Party

Executed on: 03/06/2024 _____ (Date)

**OR**

The following attorney(s) prepared or assisted me in preparation of _____.
**(Title of Document)**

_____
(Name of Attorney)

_____
(Address of Attorney)

_____
(Telephone Number of Attorney)
Prepared, or assisted in the preparation of, this document

Dr. Carol Y. Scarlett
_____
(Name of *Pro Se* Party (Print or Type)

*Dr. Carol Scarlett*
_____
Signature of *Pro Se* Party

Executed on: 03/06/2024 _____ (Date)