IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| CAROL SCARLETT<br>*Plaintiff*,<br><br>v.<br><br>NATIONAL SCIENCE FOUNDATION,<br>*Defendant*. | Case No.: 1:24-cv-00386 (MSN/WEF) |

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on Defendant National Science Foundation's ("NSF") Motion to Dismiss (ECF 12) pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Upon consideration of the pleadings and for the reasons set forth below, the Court will **GRANT** the motion.

**I.   BACKGROUND**

On December 15, 2016, Plaintiff Carol Scarlett received a "Phase I" Small Business Innovative Research ("SBIR") grant from the NSF.[1] ECF 9 ("Am. Compl.") ¶ 6. The SBIR program "encourage[s] U.S. small businesses to engage in Federal Research/Research and Development initiatives that have commercialization potential." SBA SBIR/STTR Ann. Rep. 6 (2019). In August 2017, after completing Phase I, Dr. Scarlett applied for Phase II of the SBIR program. Am. Compl. ¶ 7. On April 2, 2018, her Phase II application was denied. *Id.* ¶ 10.

Dr. Scarlett alleges that her Phase II grant application was subjected to "enhanced grant criteria" in violation of NSF policies. *Id.* ¶ 39. On March 2, 2018, Dr. Scarlett spoke with an "NSF

---

[1] The SBIR program is structured in three phases. *See* 15 U.S.C. § 638(e)(4). Phase I determines "the scientific and technical merit and feasibility of ideas that appear to have commercial potential." *Id.* § 638(e)(4)(A). Phase II awards are "based on the scientific and technical merit and feasibility of the proposals, as evidenced by the first phase" and considering the proposal's commercial potential. *Id.* § 638(e)(4)(B). Phase III "derives from, extends, or completes efforts made under prior funding agreements." *Id.* § 638(e)(4)(C).

1

externally hired CPA Firm" which told her she needed "twenty-four times the stated NSF criteria for financial liquidity" to qualify for a grant. *Id.* ¶ 8. This requirement was later echoed by NSF Branch Chief Charles Ziegler, who "pressed [Dr. Scarlett] to move twenty-four times (24x) the company's one-month burn to a liquid, business account and file all new financial paperwork, before submitting an appeal of the declined proposal." *Id.* ¶ 16.

Dr. Scarlett points to other irregularities which took place during the consideration of her Phase II application. She alleges that prior to the denial of her application, NSF employees and contractors made "false statements" and filed reports containing "false information" about her business. *Id.* ¶¶ 9, 11. She further alleges that the NSF improperly failed to consider "interim financial statements" when evaluating her company's financial information. *Id.* ¶ 41; *see also* ECF 1-4 ("Pl. Ex. D").

On April 8, 2018, Dr. Scarlett appealed the denial of her grant. Am. Compl. ¶ 17. On May 11, 2018, she received a letter from the NSF denying the appeal and "stating even more new and enhanced criteria for receiving a grant in violation" of NSF policies. *Id.* ¶ 18. Dr. Scarlett alleges that although the NSF's purported explanation for the denial was "based on financial information," the denial was in fact due to discrimination against her based on her race and gender. *Id.* ¶¶ 47, 53.

Following the denial of her Phase II grant application, Dr. Scarlett filed a complaint with the NSF Office of Inspector General ("OIG") alleging: (1) "Race and Gender discrimination in processing" her application; (2) "Whistleblower Retaliation in the processing of [her] appeal;" and (3) violations of federal "rules for competitive awards." *Id.* ¶ 19. On September 11, 2019, the OIG closed the investigation, stating "that they found no evidence to support" Dr. Scarlett's allegations. *Id.* ¶ 29. At the same time, the OIG was conducting a separate investigation into whether Dr. Scarlett had violated grant rules while receiving Phase I funds. *Id.* ¶ 14. The two OIG investigations

2

were the subject of a parallel lawsuit filed by Dr. Scarlett, which this Court dismissed. *See Scarlett v. Nat'l Sci. Found. Off. of Inspector Gen.*, No. 1:23-cv-01323, 2024 WL 3625176 (E.D. Va. Aug. 1, 2024).

## II. PROCEDURAL HISTORY

Dr. Scarlett filed a Complaint against the NSF on March 11, 2024, and filed an Amended Complaint with leave of Court on April 12. Am. Compl. 1. The Amended Complaint brings five counts under the Federal Torts Claim Act ("FTCA") against the NSF related to the denials of her Phase II grant application and subsequent appeal. *Id*. 9-11. Count One alleges that the NSF breached a contract with Dr. Scarlett "by holding [her] to unstated, significantly enhanced criteria." Counts Two and Three allege race-based and gender-based discrimination in violation of the Virginia Human Rights Act ("VHRA") and Titles VI and VII of the Civil Rights Act. *Id.* ¶¶ 47, 53. Count Four alleges whistleblower retaliation "in violation of 41 U.S.C. § 4712." *Id.* ¶ 54. Count Five alleges that the NSF demanded money from Dr. Scarlett and then forwarded the "disputed federal debt" to the Treasury Department in violation of the Federal Debt Collection Protection Act ("FDCPA"). *Id.* ¶ 63.

On May 22, 2024, the NSF filed a Motion to Dismiss for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1) and failure to state a claim pursuant to Rule 12(b)(6). ECF 12. The NSF also filed a Notice of Related Case, informing the Court of Dr. Scarlett's pending suit against the NSF OIG. ECF 16.

## III. LEGAL STANDARD

Federal district courts are courts of limited jurisdiction and possess only the jurisdiction granted to them by the United States Constitution and federal statutes. *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005). When a district court lacks subject matter

jurisdiction over an action, the action is subject to dismissal pursuant to Rule 12(b)(1). *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506-07 (2006). When a Rule 12(b)(1) challenge is raised, the burden of proving jurisdiction is on the plaintiff, and the court "may consider evidence outside the pleadings." *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). A Rule 12(b)(1) motion to dismiss should be granted when "the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Balfour Beatty Infrastructure, Inc. v. Mayor and City Council of Baltimore*, 855 F.3d 247, 251 (4th Cir. 2017) (quoting *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999)).

**IV.    ANALYSIS**

"As a sovereign, the United States is immune from all suits against it absent an express waiver of its immunity." *Welch v. United States*, 409 F.3d 646, 650 (4th Cir. 2005). Such a waiver "must be unequivocally expressed in statutory text . . . and will not be implied." *Lane v. Pena*, 518 U.S. 187, 192 (1996). Furthermore, "[a]ll waivers of sovereign immunity must be 'strictly construed . . . in favor of the sovereign.'" *Welch*, 409 F.3d at 650 (citing *Lane*, 518 U.S. at 192). Without an unequivocal statutory waiver of sovereign immunity, the Court lacks subject matter jurisdiction and the case should be dismissed under Rule 12(b)(1). *See Williams v. United States*, 50 F.3d 299, 304 (4th Cir. 1995).

Dr. Scarlett brings her claims against the NSF under the FTCA, 28 U.S.C. §§ 2671 et seq. Am. Compl. 1. The FTCA is a "limited waiver of the United States' sovereign immunity" for "acts or omissions of agents or employees of the United States." *Williams*, 50 F.3d at 305. The FTCA's exceptions to immunity "are narrow, thereby preserving congressional intention to immunize the United States from various classes of suits." *Id.*

As explained below, Dr. Scarlett's claims against the NSF are not the type of state law tort claims which fall within the scope of the FTCA. Even if they were, the challenged actions by the NSF are covered by the discretionary function exception of the FTCA. *See* 28 U.S.C. § 2680(a). Because the United States has not waived sovereign immunity as to Dr. Scarlett's claims, the Court lacks subject matter jurisdiction and will therefore **GRANT** the NSF's motion to dismiss pursuant to Rule 12(b)(1).

**A. Scope of the FTCA's Waiver of Sovereign Immunity**

The FTCA waives sovereign immunity only "when the alleged breach of duty is tortious under *state* law," or where there is a breach of federal law "that is analogous to a duty of care recognized by state law." *Goldstar (Panama) S.A. v. United States*, 967 F.2d 965, 969 (4th Cir. 1992). Therefore, "the mere allegation of a breach of duty under Federal law does not, by itself," state a valid claim under the FTCA. *Id.*; *see also Williams,* 242 F.3d at 173 ("The FTCA does not waive the United States' immunity against liability for violation of its own statutes.").

Dr. Scarlett alleges breaches of Titles VI and VII of the U.S. Civil Rights Act (Counts II and III); 41 U.S.C. § 4712 (Count IV); and the FDCPA (Count V). *See* Am. Compl. 9-12. Because these are federal statutes, and Dr. Scarlett does not plead an "analogous state law tort," they are not valid claims under the FTCA and must be dismissed.[2] *Harvey v. United States*, No. 3:22-cv-169, 2022 WL 17405826, *11-12 (E.D. Va. Dec. 2, 2022).

---

[2] Dr. Scarlett is clear that her claims are brought under the FTCA. *See* Am. Compl. 1; Pl. Mem. in Resp. 14. Even independent of the FTCA, none of these statutes provide a valid cause of action against the United States. Title VI (42 U.S.C. § 2000d) does not create a cause of action against the federal government or waive sovereign immunity. *See Jersey Heights Neighborhood Ass'n v. Glendening*, 174 F.3d 180, 191 (4th Cir. 1999). Title VII (42 U.S.C. § 2000e) prohibits discrimination by employers, and is not applicable to Dr. Scarlett's claim as a grantee. *See Netter v. Barnes*, 908 F.3d 932, 937 (4th Cir. 2018). 41 U.S.C. § 4712, as explained by the District Court for the District of Columbia to Dr. Scarlett in a previous lawsuit, also "does not . . . provide for lawsuits against the federal government." 2022 WL 17830227 at *17-18. And the FDCPA does not waive sovereign immunity for suits against the United States*. Bond v. United States Dep't of Educ.*, 2014 WL 4093343, *9 (W.D. Va. Aug. 18, 2014).

The Amended Complaint contains two additional claims, neither of which falls within the scope of the FTCA. First, Dr. Scarlett alleges that the NSF breached a contract when they held her Phase II application to "to unstated, significantly enhanced criteria." Am. Compl. ¶ 42. As a claim for breach of contract, this does not fall within the scope of FTCA. *See Bresler v. Wilmington Trust Co.*, 761 Fed. Appx. 160, 161 ("a breach of contract is not *ipso facto* a tort."); *Kamlar Corp. v. Haley*, 224 Va. 699 (1983). Moreover, "[c]ontract claims against the United States in excess of $10,000 are under the exclusive jurisdiction of the Court of Federal Claims." *McManus v. United States*, No. 1:23-cv-671, 2024 WL 388100, *17 (E.D. Va. Feb. 1, 2024). As Dr. Scarlett seeks $6,000,000 in damages, the Court lacks jurisdiction over her contract claim.[3] Am. Compl. 13.

Second, Dr. Scarlett claims that the NSF discriminated against her on the basis of race and gender, in violation of the VHRA. Am. Compl. ¶¶ 48-49. The VHRA protects individuals from "unlawful discrimination" in places of public accommodation and employment. Va. Code Ann. § 2.2-3900 (2024). But a violation of a state anti-discrimination law is a poor fit for the FTCA's limited waiver as to "ordinary common-law torts." *Smith v. Washington Metro. Area Transit Auth.*, 290 F.3d 201, 207 (4th Cir. 2002) (quoting *Dalehite v. United States*, 346 U.S. 15, 28 (1953). For this reason, courts have repeatedly held that the United States has not waived sovereign immunity for suits under state anti-discrimination laws. *See Goode v. United States Dep't of Homeland Sec.*, 815 Fed. Appx. 643, 645 (3d. Cir. 2020) (reasoning that Congress had not "'unequivocally expressed' its waiver of sovereign immunity" for such suits); *Holt v. Shinseki*, No. 2:13-cv-22, 2013 WL 5797382 *7 (W.D. Pa. Oct. 18, 2013) (same); *Leitch v. MVM, Inc.*, No. 03-4344, 2004

---

[3] The Court may transfer a case to a court with jurisdiction "if it is in the interest of justice" to do so. 28 U.S.C. § 1631. The Court declines to exercise its discretion in this instance. Dr. Scarlett bases her contract claim on the statement of an NSF employee that "she would need to retain at least 1-month of the company's burn rate as defined by the last 3-months of operation, in order to qualify for a Phase II award." Am. Compl. ¶ 6. This limited statement regarding a condition of Phase II qualification falls well short of a contractual agreement, and it would not be in the interest of justice to transfer the claim.

U.S. Dist. LEXIS 14307, *24 (E.D. Pa. July 21, 2004); *see also Desai v. DeJoy*, 2023 WL 3550103, *26 (E.D. Va. May 18, 2023) (finding the court lacked subject matter jurisdiction over a VHRA claim against the United States Postal Service).

### B. Discretionary Function Exception

Even if Dr. Scarlett could identify a state law tort which the NSF violated, her claims would fail due to the FTCA's discretionary function exception. *See* 28 U.S.C. § 2680(a). The FTCA does not waive sovereign immunity for claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty" by a government agency or employee, "whether or not the discretion involved be abused." *Id*. The plaintiff bears the burden of showing that a "waiver of sovereign immunity exists and that none of the [FTCA's] waiver exceptions apply to h[er] particular claim." *Welch v. United States*, 409 F.3d 646, 651 (4th Cir. 2005).

The discretionary function exception applies where the government action at issue "involves an element of judgment or choice" and is "based on considerations of public policy." *Berkovitz v. United States*, 486 U.S. 531, 536-37 (1988). The first prong of this inquiry "boils down to whether the government conduct is the subject of any mandatory federal statute, regulation, or policy prescribing a specific course of action." *Baum v. United States*, 986 F.2d 716, 720 (4th. Cir. 1993). The focus of the second prong is on "the nature of the actions taken and on whether they are susceptible to policy analysis." *United States v. Gaubert*, 499 U.S. 315, 325 (1991). Where the relevant statute, regulation or agency guideline permits discretion, there is a "strong presumption" that the second prong is met. *Clendening v. United States*, 19 F. 4th 421, 435 (4th Cir. 2021). And, as the FTCA's text makes clear, the exception applied even where a government actor abuses their discretion. 28 U.S.C. § 2680(a). That is, the decisions of government officials "need not be correct" to be immune. *Ayala v. United States*, 982 F.3d 209, 216 (4th Cir. 2020).

Dr. Scarlett argues that the discretionary function exception does not apply here because the NSF failed to follow its mandatory criteria when evaluating her application and "had no discretion to increase the criteria."[4] ECF 19 ("Pl. Mem. in Resp.") 24. For example, Dr. Scarlett alleges that she was required to have a much higher ratio of assets to liabilities than is required by the NSF's criteria. *See* Pl. Ex. A, fig. 3. In essence, Dr. Scarlett argues that because she satisfied *some* of the criteria for financial viability, the NSF was required to award her a Phase II grant. *See* Pl. Mem. in Resp. 24 (asserting that "[t]here is simply no 'choice' being made by NSF [a]gents while conducting a financial review.").

Dr. Scarlett's argument fails because the statutes, regulations and policies governing SBIR awards demonstrate that the NSF possesses broad discretion when evaluating the financial viability of SBIR applicants. Each federal agency that administers an SBIR program is empowered to "unilaterally receive and evaluate proposals," and "make a final decision on each proposal submitted under the SBIR program." 15 U.S.C. § 638(g)(4). The agency "must have in place a framework for evaluating the risks posed by applicants before they receive Federal awards." 2 C.F.R. § 200.206(b)(1). When evaluating risks, the agency "may consider any items" including the applicants' financial stability, management systems and standards, history of performance, audit reports and findings, and ability to effectively implement requirements. *Id.* § 200.206(b)(2)(i)-(v). Notably, an agency is not required to issue an award if the risk is low, or to

---

[4] In addition to the failing to follow their stated financial criteria, Dr. Scarlett claims the NSF violated two general federal regulations. First, by subjecting her application to enhanced criteria, the NSF violated the regulation that "[f]ederal awarding agencies must not impose additional or inconsistent requirements" beyond what is found within regulations and applicable law. 2 C.F.R § 200.100. Second, because the NSF did not notify the public of the enhanced criteria, they violated a requirement that the "awarding agency must notify the public" of their "general eligibility requirements," including "[t]he statutory, regulatory or other eligibility factors or considerations that determine the applicant's qualification for Federal awards under the program." 2 C.F.R § 200.203. Dr. Scarlett's claims under these regulations fail because, as explained below, the NSF did not enhance or otherwise violate their criteria when evaluating Dr. Scarlett's application. Therefore, the NSF did not impose "additional or inconsistent requirements" upon Dr. Scarlett, nor did it fail to notify the public of new criteria.

deny an award where there is high risk. *See id.* § 200.206(b)(1) (allowing the agency to attach "special conditions that correspond to the degree of risk assessed" if it determines that an "award will be made").

In order to evaluate financial risk, the NSF conducts a "Financial Capability Review ("FCR") on every prospective Phase II grantee." Nat'l Sci. Found., CAP SBIR/STTR Phase II Administrative/Financial Reviews, https://www.nsf.gov/bfa/dias/caar/sbirrev.jsp (last visited July 31, 2024). The NSF "will decline funding when an [applicant] is unable to demonstrate that it has sufficient financial resources as of the evaluation date, or in its opinion, there is a risk of inappropriate use of Federal funds." *Id*. Applicants submit a number of required documents, and are encouraged to submit "any other information that they believe is relevant to understanding the financial capability and/or financial viability of their company." *Id.* ¶ A11.

The FCR guidelines do not require the NSF to grant or deny an application based on a single factor, nor do they set minimum requirements regarding any one factor. The use of multiple criteria to be evaluated and balanced leaves the ultimate determination within the discretion of the NSF. *See Hardscrabble Ranch, L.L.C. v. United States*, 840 F.3d 1216, 1221 (10th Cir. 2016) (holding that a "Decision Checklist" provided to Forest Service ["USFS"] employees to determine appropriate fire-management responses "did not remove USFS employees' choice or judgment regarding what measures to take"); *Hardiman v. United States*, 945 F. Supp. 2d 246, 255 (D. Mass. 2013) (holding that federal probation officer guidelines which "list[ed] several factors to consider" "clearly grant[ed] the officers discretion to make choices."). Furthermore, the FCR guidelines grant the NSF discretion to decline funding where "in its opinion, there is a risk of inappropriate use of Federal Funds." CAP SBIR/STTR Phase II Administrative/Financial Reviews.

9

Because the NSF's conduct is not "the subject of any mandatory federal statute, regulation, or policy prescribing a specific course of action," it satisfies the first prong of the discretionary function analysis. *Baum*, 986 F.2d at 720. Having met the first prong, the Court applies the "strong presumption" that the conduct is grounded in public policy and therefore satisfies the second prong. *Clendening*, 19 F. 4th at 435. Even absent such a strong presumption, the FCR furthers the public policy goal of ensuring that an SBIR grant "does not expose the government to the possibility of waste, fraud or abuse of funds." CAP SBIR/STTR Phase II Administrative/Financial Reviews.

For the foregoing reasons, the NSF's denial of Dr. Scarlett's Phase II SBIR application was a discretionary action and falls outside of the scope of the FTCA. Therefore, the United States retains its sovereign immunity as to Dr. Scarlett's claims, and the Court lacks subject-matter jurisdiction to preside over the instant action. Accordingly, it is hereby

**ORDERED** that the Complaint is **DISMISSED**, and it is further

**ORDERED** the NSF's Motion to Dismiss is **GRANTED.**

The Clerk is directed to enter judgment in favor of Defendant pursuant to Rule 58 and to close this civil action.

It is **SO ORDERED**.

/s/ Michael S. Nachmanoff
_____
Hon. Michael S. Nachmanoff
United States District Judge

Aug 6, 2024

Alexandria, Virginia